**WALTER E. HELLER & COMPANY, INC., Plaintiff,**

v.

**Ralph COX, Jr., Defendant.**

**WALTER E. HELLER & COMPANY, INC., Plaintiff,**

v.

**OCEAN AIR TRADEWAYS, a partnership, Defendant.**

**Nos. 66 Civ. 1437, 69 Civ. 5094.**

United States District Court, S. D. New York.

Aug. 12, 1974.

tiff and United States Overseas Airlines, Inc., (hereinafter "USOA") and Heller's subsequent collection efforts. For the reasons which follow, this motion is granted.

Wachtel, Lipton, Rosen & Katz, New York City (Herbert M. Wachtell, Bernard Mindich and Allen P. Rosiny, New York City, of counsel), for plaintiffs.

Bill Smalley, Tulsa, Okl., for defendants.

Battle, Fowler, Lidstone, Jaffin, Pierce & Kheel, New York City (Michael J. Saltser, New York City, of counsel), for Stanley P. Weiss.

Atchison, Haile & Haight, Santa Cruz, Okl. (Rodney R. Atchison, Santa Cruz, Okl., of counsel), for C. R. E. Smith and others.

## OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

BAUMAN, District Judge.

Plaintiff, Walter E. Heller & Company, Inc., (hereinafter "Heller") seeks an injunction against the further prosecution or institution of proceedings against it, its officers and affiliates by defendants Ralph Cox, Jr. (hereinafter "Cox") and Ocean Air Tradeways (hereinafter "OAT"), insofar as those proceedings relate to matters arising from a 1962 loan transaction between plain-

### I.

A hearing was held on April 2, 1974 at which both sides were afforded an opportunity to call witnesses and present evidence. Plaintiff chose to rest on its affidavits, consisting of well over one-hundred pages and the more than seventy annexed exhibits.[1] Defendants have submitted virtually nothing of any significance in opposition.[2] No live testimony was presented by any of the parties.

■ Although Judge Friendly has repeatedly warned of the undesirability of issuing injunctions solely on the basis of affidavits, see Semmes Motors, Inc. v. Ford Motor Company, 429 F.2d 1197, 1204 (2d Cir. 1970); SEC v. Great American Industries, 407 F.2d 453, 455 (2d Cir. 1968, in banc.), cert. denied, 395 U.S. 920, 89 S.Ct. 1770, 23 L.Ed.2d 237; SEC v. Frank, 388 F.2d 486, 490–492 (2d Cir. 1968), where, as here, the affidavits are overwhelming and uncontroverted "the taking of evidence would serve little purpose." SEC v. Frank, supra at 490; Murray v. Kunzig, 149 U.S.App.D. C. 256, 462 F.2d 871, 883 (1972). Although actually encouraged by the court to do so, defendants made no serious attempt to rebut Heller's affidavits.[3] Ac-

---

1. Hearing transcript, pp. 15–16.

2. Although Cox has submitted a one and a half page affidavit and the trustee in bankruptcy for OAT has submitted one of equal length these contain no significant factual allegations.

3. At the hearing this court made a serious effort to indicate to the defendants the risks they ran by their failure to submit papers in opposition to plaintiff's motion. Early in the hearing I advised defendants' counsel:
 " . . . and, of course, you see, gentlemen for the opposition, this is the disadvantage you have when one side submits papers and you don't, because what I have is the argument that they have made and

nothing from you." [Hearing Transcript, pg. 13.]
 A short time later the following dialogue ensued:
 "THE COURT: . . . I take it, then, that you have no witnesses or affidavits that you wish to submit?
 "MR. SMALLEY (Attorney for Cox and OAT): None other than those submitted previously . . .
 * * * * *
 "THE COURT: Have you submitted any contradicting affidavits or made any contradicting factual showings? . . . .
 * * * * *
 "MR. SMALLEY: First, your Honor, the burden of proof is on the Walter E. Heller Company. . . .

cordingly, I am required to take as true the statements of fact contained in the Heller affidavits. Williams v. San Francisco Unified School District, 340 F.Supp. 438, 442 (N.D.Cal.1972); Corning Glass Works v. Lady Cornella, Inc., 305 F.Supp. 1229, 1231 (E.D.Mich. 1969); Western Air Lines v. Flight Engineers Internat'l Ass'n., 194 F.Supp. 908 (S.D.Cal.1961).

## II.

Substantial portions of the factual background of the instant litigation are set out in my previous opinion, Walter E. Heller & Co. v. Cox, 343 F.Supp. 519 (S.D.N.Y.1972), aff'd 486 F.2d 1398 (2d Cir. 1973); cert. denied 414 U.S. 827, 94 S.Ct. 46, 38 L.Ed.2d 61 (1973). A familiarity with that decision is assumed and an effort has been made to avoid unnecessary repetition in setting out the following findings of fact.

On November 23, 1962, plaintiff entered into a written loan agreement with USOA and various affiliated companies and persons, including Air Power Overhaul Inc. (hereinafter "APO"), Ocean Air Tradeways, Inc. (hereinafter "OAT, Inc.), Canamex Corporation, and defendants Cox and OAT. The loan agreement provided that plaintiff would lend $1,700,000 to USOA repayable with interest by USOA in 24 successive monthly installments.[4] Simultaneously Cox, OAT, OAT, Inc., APO and Canamex executed and delivered separate written guarantees of the USOA indebtedness. Heller also received an additional guarantee from an independent third party, Twentieth Century Aircraft Co. (hereinafter "Twentieth Century"), of which Mr. Stanley Weiss, who has moved to intervene in the instant action, was the principal partner. Finally, Heller received various collateral for the loan and guarantee obligations from USOA and its affiliates.

USOA defaulted on its obligations from the very outset. The first installment of the loan was only partially paid, and thereafter not one installment was paid in its proper amount or when due. Nonetheless, Heller refrained from declaring a default until July, 1965 at which time it accelerated the entire amount outstanding and began pursuit of collection by, among other things, the sale of collateral. From that point on, Heller became enbroiled in one litigation after another, faced time and again "with the most frivolous challenges, harassments and dilatory maneuverings imaginable designed to frustrate and prevent Heller from recovering the monies owed to it."[5] To date there have been at least 15 separate major litigations and proceedings in 10 different

---

"THE COURT: I am going to tell you right here and now that so far they have made a showing, and I would say the burden of going forward is on you . . . ." [Hearing Transcript, pp. 16–17.]
Mr. Smalley then made reference to two "affidavits" which he had filed. The first of these was a letter from his doctor explaining that an ear infection prevented his presence at a previous conference before me. The second, signed by Mr. Smalley, advises the court of his inability to contact Mr. Cox and asserts six conclusory allegations as to the various issues in the case. Following Mr. Smalley's brief presentation the dialogue continued:
"THE COURT: Are there any other factual matters beyond these two which you want me to take into consideration in determining the factual issue here? Yes or no?

"MR. SMALLEY: No, your Honor. There is no further affidavit filed in this case, but if there was an iota of evidence presented by the Walter Heller Company in this case at this time, we would probably produce witnesses.
"THE COURT: You and I differ strongly as to whether or not there is an iota of evidence." [Hearing Transcript, pg. 20.]

4. At the time of the loan, USOA executed a collateral installment note in the face amount of $1,979,631.75 reflecting the advance of the $1,700,000 plus interest.

5. Mindich affidavit ¶ 8. Although the adjectives are Mr. Mindich's a careful examination of the seventy exhibits which contain many of the pleadings and decisions of these "numerous" litigations has convinced me of the validity of his characterization.

courts throughout the country. Because of their relevance to Heller's request for a "bill of peace" a brief description of each follows:[6]

1. California Superior Court[7]—These actions were instituted by two creditors of USOA. Plaintiffs had levied writs of attachment and execution on a USOA plane that was part of the collateral pledged to Heller. Heller, having previously declared the default against USOA, intervened to protect its collateral.

DISPOSITION: In each case the court recognized the validity of Heller's lien and its superiority to any interest of the creditor-plaintiffs.[8]

2. California Superior Court[9]—In February, 1966 Heller prepared to proceed with a sale of certain real estate, machinery and equipment which OAT, Inc. and APO had pledged as collateral. On the date of the scheduled sale Heller was served with an order to show cause temporarily restraining the sale based on an application of OAT, Inc. and APO, made through Mr. Cox.[10] Cox also filed a complaint seeking a permanent injunction and money damages.

DISPOSITION: Following a hearing the court lifted the TRO, permitting Heller to proceed with the sale. Cox thereupon abandoned the action.

3. U.S. District Court, Northern District of California[11]—On March 18, 1966 just as Heller was about to proceed with its sale it was notified that Mr. Cox[12] had filed petitions on behalf of OAT, Inc. and APO pursuant to Chapter XI of the Federal Bankruptcy Act. Simultaneously OAT, Inc. and APO petitioned the court for a temporary restraint of the sale of the assets involved in litigation # 2.

DISPOSITION: Based on assurances by Mr. Cox's counsel that negotiations were proceeding for a private sale of the collateral a 30 day restraint of Heller's intended public sale was ordered. Having subsequently determined that no private buyer was forthcoming, the court lifted the restraint and ordered the public sale to proceed.

4. New Jersey Superior Court[13]—Following the sale in California a substantial deficiency remained on the USOA indebtedness. Accordingly, Heller scheduled the sale of additional collateral located in New Jersey and owned by USOA and other guarantors. Cox and USOA thereupon filed an action seeking to enjoin the sale. The action was commenced by an order to show cause and the issuance of a TRO.

DISPOSITION: Based on representations by Mr. Cox's counsel that USOA was expecting a substantial refinancing the TRO was continued following the hearing. When the refinancing failed to materialize the stay was lifted permitting Heller to proceed.[14]

5. U.S. District Court, District of New Jersey[15]—In September, 1966,

---

6. The order is chronological.

7. Potter Aircraft Service, Inc. v. United States Overseas Airlines, Inc., et al. (Super.Ct., Calif., L.A. Co.); and E. B. Johnson v. United States Overseas Airlines, Inc., et al. (Super.Ct., Calif., L.A. Co.).

8. Both opinions were filed on March 16, 1966.

9. Ocean Air Tradeways and Airpower Overhaul, Inc. v. Trans America Title Insurance Co., et al. (Super.Ct., Calif., Alameda Co.).

10. At that time Cox was vice president of APO.

11. In the Matter of Ocean Air Tradeways, Inc. (N.D.Calif.); In the Matter of Airpower Overhaul, Inc. (N.D.Calif.).

12. Mr. Cox was by then president of both APO and OAT, Inc.

13. Ralph Cox, Jr. and United States Overseas Airlines, Inc. v. Walter E. Heller, Inc., et al. (Super.Ct., N.J., Cape May Co.).

14. It is noteworthy that the Honorable John B. Wick, presiding at the hearings, referred to Mr. Cox and his father as "the biggest liars in the world". [Transcript pp. 22, 25.].

15. In the Matter of United States Overseas Airlines, Inc. (D.N.J.). This proceeding is

before the New Jersey collateral had been sold, Cox, acting as President of USOA filed a petition, pursuant to Chapter XI of the Federal Bankruptcy Act, and obtained a stay of the further sale of any collateral. Heller promptly petitioned the court for leave to sell certain assets of the bankrupt. USOA, at the instigation and direction of Cox, challenged plaintiff's right to conduct the sales and opened a full-scale attack on the validity of the indebtedness alleging a myriad of alleged improprieties by Heller. Every relevant transaction and every item of indebtedness then outstanding was subjected to scrutiny and challenge.

DISPOSITION: The referee held that Heller's claim was valid and shortly thereafter an order was granted, permitting the sale of the New Jersey collateral to continue.[16]

6. U.S. District Court, District of New Jersey [17]—In April, 1967, Cox, acting for USOA filed a petition, pursuant to Chapter X of the Federal Bankruptcy Code. Simultaneously the court was asked to stay the scheduled sale of the same New Jersey assets which Cox had unsuccessfully sought to stay in the Chapter XI proceeding.

DISPOSITION: The Chapter X petition and the requested stay were both denied.

7. U.S. Court of Appeals, Third Circuit—Cox appealed the denial of the Chapter X petition and for the fourth time sought a stay of the sale of the New Jersey assets.

DISPOSITION: The application for the stay was denied in all respects.

The appeal from the denial of the Chapter X petition was thereafter never pursued.

8. California Superior Court [18]—This action was brought in May, 1967 by the trustee in bankruptcy of OAT, Inc. and APO alleging that Heller had received "usurious" interest by reason of its sale of the California collateral. Later, the claims were expanded to assert fraudulent inducement of the loan and improper sale of collateral.

DISPOSITION: This action was dismissed upon Heller's motion for summary judgment and the notice of appeal was not timely filed.

9. New Jersey, Cape May County Court [19]—This was a suit by C & J Aircraft Leasing Co. against USOA concerning the ownership of four airplanes. Heller intervened in the action in July, 1967 to assert its lien against any planes found to be owned by USOA.

DISPOSITION: This case was settled. It was agreed that the aircraft would be sold and Heller would have first rights to the proceeds.

10. New York Supreme Court [20]—In September, 1969 Mr. Cox, together with USOA's trustee in bankruptcy, Canamex, OAT and C & J, instituted a multi-million dollar suit against Heller alleging a series of improper sales of collateral resulting in an alleged over-payment of the USOA loan.

DISPOSITION: Removed to the Southern District of New York.

11. New York Supreme Court [21]—In October, 1969 the trustees in bankruptcy of OAT, Inc. and APO filed

described in some detail in my prior opinion. 343 F.Supp. at 522–523.

16. This order, however, was entered without prejudice to USOA's right to interpose counterclaims. Although several were in fact asserted at a subsequent date, these were dismissed after Cox failed, on several occasions, to appear for trial.

17. In the Matter of United States Overseas Airlines, Inc. (D.N.J.).

18. John Costello, as Trustee in Bankruptcy of Airpower Overhaul, Inc. and Ocean Air

Tradeways, Inc. v. Walter E. Heller & Company, Inc. (Super.Ct., Calif., Alameda Co.).

19. C & J Aircraft Leasing Co. v. United States Overseas Airlines, Inc. (Cape May County Co., New Jersey).

20. Joseph Tenenbaum, Trustee in Bankruptcy of United States Overseas Airlines, Inc., et al. v. Walter E. Heller & Company, Inc. (New York Supreme Court, New York County).

21. C.R.E. Smith, Trustee in Bankruptcy of Airpower Overhaul, Inc. and Trustee in

another multi-million dollar suit against Heller and Twentieth Century alleging fraud and wrongful sale of the California collateral.

DISPOSITION: Removed to the Southern District of New York. On May 6, 1970 Judge Wyatt granted Heller's motion to dismiss but plaintiffs were authorized to amend their complaint to satisfy, if possible, the deficiencies raised by Heller's motion. Plaintiffs thereafter amended their complaint and this action was consolidated with litigation # 10. After consolidation neither of the actions was actively prosecuted by the plaintiffs and in August, 1973 they were "statistically closed" by order of Judge Tyler.

12. California Superior Court [22]—This action, in fact a precise duplicate of litigation # 11, was filed by the trustee in bankruptcy of APO and OAT, Inc. in October, 1969. The complaint while served on defendant Twentieth Century was never served on Heller.

DISPOSITION: Twentieth Century removed the action to the U.S. District Court, Northern District of California where it was eventually dismissed for failure to prosecute.

13. U.S. District Court, Southern District of New York [23]—This action was brought by Heller to recover the deficiency remaining on the USOA indebtedness based on the guarantees of Cox and OAT. I presided over this trial which commenced on January 24, 1972. Cox and OAT defended the action by raising a host of claims in-

cluding usury, improper sales of collateral, alleged fraud in the inducement and a general massive conspiracy to seize control of USOA. This last claim was so utterly lacking in merit that I rejected it without discussion.

DISPOSITION: An opinion was filed May 23, 1972, resolving all issues in favor of Heller.[24] The Court of Appeals subsequently affirmed [25] and a petition for certiorari was denied.[26]

14. U.S. District Court, District of New Jersey [27]—This was an action to reform the decision of the referee discussed in footnote 16 [litigation # 5]. My opinion in litigation # 13 had interpreted several aspects of the referee's decision and this suit was an attempt by Mr. Cox, through the trustee in bankruptcy for USOA, to have that decision "clarified" by the referee. In this way it is apparent that Cox hoped to alter my decision in Heller v. Cox.

DISPOSITION: The referee, in an opinion filed in November, 1972, rejected the request for "reformation" and concluded that my interpretation of his decision had been correct.[28]

## III.

The fifteenth and most recent litigation, presently pending, deserves a more detailed examination in view of its significance to the case at bar.

On June 1, 1973 an action was brought in California Superior Court on behalf of OAT, Canamex, C & J and the trustees in bankruptcy of USOA, APO

Bankruptcy of Ocean Tradeways, Inc. v. Walter E. Heller & Company, Inc. (New York Supreme Court, New York County).

22. C.R.E. Smith, Trustee in Bankruptcy of Airpower Overhaul, Inc., et al. v. Walter E. Heller & Company, Inc., et al. (Super.Ct., Calif., Alameda Co.).

23. Walter E. Heller & Co. v. Cox (S.D.N.Y.) and Walter E. Heller & Co. v. Ocean Air Tradeways (S.D.N.Y.) consolidated for trial.

24. See Walter E. Heller & Co. v. Cox, 343 F.Supp. 519 (S.D.N.Y.1972).

25. 486 F.2d 1398 (2d Cir. 1973).

26. 414 U.S. 827, 94 S.Ct. 46, 38 L.Ed.2d 61 (1973).

27. In re United States Overseas Airlines (D.N.J.).

28. The issue of most concern here was whether the dismissal of the counterclaims had been "with prejudice". I concluded that such had been the case and Referee Lipkin agreed.

and OAT, Inc. seeking $380,000,000 in damages from Heller, Twentieth Century and others for an alleged conspiracy to seize control of and destroy USOA and its affiliates.[29]

An examination of the California complaint clearly discloses that its basic thrust is the same as the action litigated before me as well as in numerous other courts throughout the country. It charges a complex theory of conspiracy among the defendants to seize control of USOA "through a scheme of fraud calculated to force the principal owners of the company to sell their stock to them [the defendants] at a low figure."[30] The overt acts alleged to have been committed by the conspirators are as follows:

1. Forcing USOA to accept an unfavorable loan for more than it needed and assuring an early default.

2. Providing for Heller to be given first priority on all USOA assets.

3. Requiring an outside guarantor (Twentieth Century and Weiss). USOA, in order to arrange for this guaranty, was allegedly forced to purchase two aircraft from Weiss "at a price far in excess of their value". The money for this purchase was made available by a further increase of the loan.

4. Inducing USOA's vice president to breach his duty and to participate in the scheme to seize control of the company. In exchange defendants allegedly offered him the presidency of USOA.

5. Causing the CAB to "suspend" USOA.

6. Seizing and selling various assets of the company at prices allegedly far below their value.

It is in response to the filing of this action that Heller has returned to this court to request that I "protect and effectuate" my prior judgment by granting:

(i) An injunction against the further prosecution of the California action against Heller by Cox, OAT and those in active concert or participation with them.[31]

(ii) A "bill of peace" prohibiting the institution of further actions against Heller arising out of 1962 loan transaction and subsequent collection efforts to the extent to which these actions related to matters previously litigated.

I have concluded that both requests should be granted.

### IV.

Determining the availability of injunctive relief against the prosecution of legal action must start with a consideration of the federal anti-injunction statute, 28 U.S.C. § 2283, which reads:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or *to protect or effectuate its judgments*." [Emphasis added].

29. C.R.E. Smith, Trustee in Bankruptcy of the Estate of Airpower Overhaul, Inc., Bankrupt, and Ocean Air Tradeways, Inc., Bankrupt; Joseph Tenenbaum, Trustee in Bankruptcy of the Estate of United States Overseas Airlines, Inc., Bankrupt; Canamex Corporation, a New York Corporation; Ocean Air Tradeways, a partnership; C & J Aircraft Leasing, a partnership v. Walter E. Heller & Co., Inc., a Delaware corporation; Heller Factors, Inc., a Delaware corporation; Walter E. Heller of California, a California corporation; Edmund Duncan; Stanley D. Weiss, and Doe one through Doe twenty, inclusive. (Superior Court, Califor-

nia, County of Monterey). Although the defendants removed the case to federal court it was subsequently remanded as having been improperly removed.

30. Page 5 of the California complaint.

31. Initially, I granted a TRO against the further prosecution of the California action. The plaintiffs in that action immediately sought a writ of mandamus from our Court of Appeals contending that I had erroneously "robbed" the California courts of jurisdiction. On March 12, 1974 Judges Moore, Mansfield and Oakes denied the petition.

This statute and its predecessors do not preclude injunctions against the institution of state court proceedings, but only bar stays of suits already instituted. Dombrowski v. Pfister, 380 U.S. 479, 484 n. 2, 85 S.Ct. 1116, 14 L. Ed.2d 22 (1965); Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Thus, to the extent Heller seeks to enjoin *future* state court proceedings, this statute need not concern me. Boraas v. Village of Belle Terre, 476 F.2d 806, 811 (2d Cir. 1973), rev'd on other grounds 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974). Insofar as Heller seeks to enjoin the further prosecution of the previously instituted California proceeding, however, the limitations of § 2283 must be observed.[32]

The history of § 2283's predecessors reflects a firm congressional policy against interference by federal courts in state judicial proceedings. Sperry Rand Corporation v. Rothlein, 288 F.2d 245, 248 (2d Cir. 1961). But, over the years, a number of judicial exceptions to the statutory prohibition were born. The most significant was one dealing with the so called "relitigation" situations; the power to enjoin "relitigation" of a federal decision in a state court.

In Toucey v. New York Life Insurance Company, 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100 (1941), the Supreme Court expressly overruled the "relitigation" cases, casting doubt on almost all the other judicial exceptions. Responding to *Toucey*, Congress amended the anti-injunction statute, adopting the present § 2283 which specifies three exceptions to the broad prohibition. The official Reviser's Note makes clear that the revised section restores the basic law as generally understood and interpreted prior to *Toucey*. Reviser's Note, 28 U. S.C. § 2283; Jackson v. Carter Oil Co., 179 F.2d 524, 526–527 (10th Cir. 1950), cert. denied, 340 U.S. 812, 71 S.Ct. 39, 95 L.Ed. 597 (1950); Sperry Rand v. Rothlein supra at 249.

Recent cases leave no doubt that § 2283 as it exists today permits a federal court to enjoin the relitigation of cases and controversies which it has fully adjudicated in order to protect or effectuate its judgment. State of Oklahoma ex rel. Wilson v. Blankenship, 447 F.2d 687, 693 (10th Cir. 1971); Woods Exploration & Pro. Co. v. Aluminum Co. of America, 438 F.2d 1286, 1311 (5th Cir. 1971); Note, Federal Power to Enjoin State Court Proceedings, 74 Harv. L.Rev. 726 (1961). This serves the commendable purpose of preventing continued litigation of the same cause of action and it assures the successful party in a federal court that he will not be deprived of his victory by a later contrary state ruling. Developments in the Law —Injunctions, 78 Harv.L.Rev. 993, 1052 (1965).

### V.

While it is now settled that a federal court may enjoin a state proceeding that is precluded under the doctrine of *res judicata*, Donelon v. New Orleans Terminal Company, 474 F.2d 1108, 1114 (5th Cir. 1973), it hardly needs saying that when two lawsuits, one in state and one in federal court, present essentially different issues and different causes of action, the state court proceeding will not be enjoined. State of Oklahoma ex rel. Wilson v. Blankenship, supra at 693. The policy against federal interference with a state suit previously filed is of long standing and particularly applicable where the equitable remedy of the injunction is sought to be used as a substitute for a non-existent right of removal. Southern California Petroleum Corp. v. Harper, 273 F.2d 715, 720 (5th Cir. 1960).

The core question then which must be resolved is whether the California litigation is precluded by the doctrine of *res judicata* in light of my previous decision in Walter E. Heller & Co. v. Cox, 343 F. Supp. 519 (S.D.N.Y.1972).

---

**32.** It is clear that the command of § 2283 may not be avoided by addressing the injunction to a party instead of to the state court.

Sperry Rand Corporation v. Rothlein, 288 F.2d 245, 247 (2d Cir. 1961).

As is well known the legal prerequisites to the application of the doctrine of *res judicata* are (1) the existence of a final judgment rendered on the merits, (2) a subsequent action between the same parties or those in privity with them, and (3) the presence of the same claim or demand. Baltimore Steamship Co. v. Phillips, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069 (1927); Saylor v. Lindsley, 391 F.2d 965 (2d Cir. 1968). If these elements conjoin, the doctrine operates to bind the parties, both as to issues actually litigated and determined and those which might have been, but were not raised and decided in the first suit. Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195 (1877); Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948); Woods Exploration & Pro. Co. v. Aluminum Co. of America, supra at 1313.

(i) *Prior Final Judgment on the Merits*

It has not been contended, nor could it be, that my prior decision did not constitute a prior final judgment rendered on the merits and this element, therefore, is clearly satisfied.

(ii) *Identity of Parties*

Plaintiffs in the California litigation, Canamex, C & J and the trustees in bankruptcy for APO, OAT, Inc. and USOA have specially appeared in order to argue that the California actions may not be enjoined absent a finding of "privity" between them and the defendants in the previous litigations: Cox and OAT.[33] This contention misinterprets the nature of the relief sought by Heller. What is sought here is not an injunction against the continuance of the California suit *per se*; it is rather an injunction restraining Cox and OAT from continuing to prosecute that suit.

Upon issuance of an injunction, it will, of course, become binding "upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them. . . ." Rule 65(d), F.R.Civ.P. While Heller has interpreted the term "in active concert or participation" to encompass Canamex, C & J and the two trustees, I decline to make specific reference to these parties in the order of the court. I choose instead to limit the injunctive decree to "Cox, OAT, their officers, agents, servants, employees and attorneys, and *those in active concert or participation with them*."[34] The applicability of this language to the parties in question is best left to a forum in which they are named as parties. The California plaintiffs should not, however, infer from this limitation that they may not be bound by the injunction that will issue. My refusal to specifically name them is due solely to Heller's failure to make them defendants in this action and not to a determination of lack of "privity".[35]

(iii) *Identity of Claim or Demand*

It seems utterly clear that no issues have been raised in the California litigation not previously raised, argued and adjudicated in the previous litigation in this court.

The thrust of the California action is its allegation of a "massive conspiracy". Not only did Cox and OAT have the *opportunity* to litigate this question before me, but *they actually did so*.[36] Although defendants had not, prior to trial, alleged or indicated any intention of prov-

---

33. Although OAT is also a plaintiff in the California case it is quite obvious that they are in no position to join in this contention.

34. To the extent that my original TRO named Canamex, C & J and the trustees for APO and OAT, Inc. its terms shall not extend to the permanent injunction.

35. Canamex, C & J and the trustees may of course submit themselves to this court and move for a construction of the decree. 7 Moore's ¶ 65.13. In this manner they may obtain guidelines prior to taking action which may be violative of the court's order.

36. Despite defendants' contention that they requested an adjournment during that trial to better prepare their presentation of this issue, I have no recollection of such a request nor does the transcript indicate that one was ever made.

ing a "conspiracy", I permitted Mr. Smalley, attorney for Cox and OAT, an unlimited opportunity to present evidence thereof upon his representation that it had only come to his attention during the course of the trial:

"While I must say that I regard with caution the fact that what you now propose was discovered within the last week, since you claim that is so and since I must accept your representation as to that, Mr. Smalley, I am going to authorize you to proceed." [Trial Transcript pg. 781].

Smalley then produced several witnesses who told a tale markedly similar to the allegations of the California complaint.

Although my findings of fact and conclusions of law following the completion of this trial omitted mention of the "conspiracy" theory, Cox and OAT may not infer that I failed to consider it. On the contrary I found it so patently "concocted" as not to be worthy of serious legal discussion.

In short, although admittedly "fleshed out", I cannot conclude that the California complaint presents any new claims not previously adjudicated here.

■ Plaintiffs' application for a permanent injunction prohibiting defendants Cox and OAT and those in active concert or participation with them from continuing to prosecute the California action against Heller is granted.[37]

## VI.

Heller additionally has moved for an injunction prohibiting Cox and OAT from instituting future actions arising out of the 1962 loan transaction and involving issues previously adjudicated.

■ A well settled doctrine exists that a federal district court is empowered to enjoin the fomenting of vexatious and groundless proceedings against a party where such multiplicity of suits results in irreparable harm and injury to him. Sovereign Camp Woodmen of the World v. O'Neill, 266 U.S. 292, 45 S. Ct. 49, 69 L.Ed. 293 (1924); Sperry Rand Corporation v. Rothlein, supra at 249; 1A Moore's ¶ 0.227.

Before proceeding to analyze the authority for the granting of such a "bill of peace", an initial finding of fact is appropriate.

As discussed previously, Heller has been subjected, over a nine year period, to at least fifteen different litigations designed to prevent its recovery of the loan to USOA. I find, without reservation or equivocation, that Cox instituted each and every one of them in bad faith. He has added an unusual talent for lying to his contempt for the judicial process. His imagination in exploiting the courts as a means of harassing, intimidating and impeding Heller in the collection of its money is truly spectacular. Over and over, Cox has ignored orders of this court to appear for depositions in aid of judgment as well as various conferences and hearings. Having asked his lawyer to communicate my warnings no less than five times, I finally adjudged Cox in contempt of court on April 2, 1974. Even this has not induced him to come forward.[38]

Against this background of bad faith, authority for granting a "bill of peace" here is readily available. Recently, Judge Gurfein of this court, in taking the same course as I now take, concluded:

"I have no doubt that this is proper relief against vexatious litigation. It derives from an inherent power of the Court and from the old equity Bill of Peace. It is now codified in the All Writs Statute, 28 U.S.C. Section

---

37. Heller has clearly met its burden of showing that, in the absence of the issuance of such an injunction, it would suffer irreparable injury. Defendants' suggestion that Heller "could go to California" and assert the defense of *res judicata* in that forum is patently absurd. Heller has spent nine years and countless dollars attempting to recover its loan from USOA. The time has come to call a halt and to permit plaintiff to rest on its victory in the federal courts without having endlessly to defend it in the various fora through which defendants may meander.

38. The conclusions as to Cox's bad faith, of course, apply equally to OAT, a partnership which appears entirely under his control.

1651(a) [39] . . . . The restraint is also in aid of this Court's prior judgments. Accordingly, it is not in contravention of 28 U.S.C. Section 2283. . . . " (Ward v. Pennsylvania New York Central Transp. Co., 328 F.Supp. 1245, 1247 (S.D.N.Y. 1971)).

Our Court of Appeals affirmed,[40] concluding:

"The provisions in those orders which restrain Ward from instituting any further action or actions against the defendants or any of them in any court in the United States based on any matter set forth in the complaint in the case . . . in the district court' were justified under the 'All Writs Statute', 28 U.S.C.A. § 1651(a), because those provisions were necessary to protect and effectuate the judgments of the Southern District. . . . " (Ward v. Pennsylvania New York Central Transp. Co., 456 F.2d 1046, 1048 (2d Cir. 1972)).

■ In view of the nightmare of litigation which has preceded this action, the bad faith of Cox which has fostered it and the clear authority to issue such an order,[41] an injunction will issue prohibiting Cox, OAT and those in active concert or participation with them "from instituting any other similar litigation or taking any other further similar or different action designed or intended to deprive petitioner of sums and amounts . . . due them under the prior judgment of this court." [42]

## VII.

■ One final question remains. Stanley D. Weiss (hereinafter "Weiss") has moved to intervene in this action for the purpose of joining in the application of Heller for an injunction against the California action and all future actions arising out of the 1962 loan transaction. I am constrained to deny this application.

Weiss, the principal partner in Twentieth Century, has been named as a defendant in the California action and in two or three of the litigations set out in Part II of this opinion.

Weiss makes no contention that he is entitled to intervene. as a matter of right, pursuant to Rule 24(a), F.R.Civ. P. The claim is rather that intervention should be "permitted" under the authority of Rule 24(b), F.R.Civ.P., which is within the broad discretion of the court. Securities and Exchange Commission v. Everest Management Corp., 475 F.2d 1236 (2d Cir. 1972); Hodgson v. United Mine Workers of America, 153 U.S.App. D.C. 407, 473 F.2d 118 (1972).

Intervention has often been denied even where common questions of law or fact are presented if, in addition, collateral or extrinsic issues are apt to be injected by the intervenor. Lipsett v. United States, 37 F.R.D. 549 (S.D.N.Y. 1965); 3B Moore's ¶ 24.10[4]. This is precisely the situation at hand. Weiss' posture differs greatly from that of Heller. He was not a defendant in the previous action before me and his intervention would raise the complex question of *res judicata* in the absence of mutuality. Furthermore, Weiss has not been the victim of fifteen litigations over a nine year period and the need for a "bill of peace" is not as apparent. A consideration of these additional factors would provoke delay which would operate to

39. 28 U.S.C. § 1651(a) reads as follows:
"The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

40. The appeal from Judge Gurfein's order was dismissed as not timely. Judge McLean, of this court, however, had entered an identical order against the same defendant in which the appeal had been timely taken. It was, therefore, technically Judge McLean's order to which the Court of Appeals addressed itself.

41. On the issue of irreparable injury see footnote 37.

42. An injunction identically worded was approved by the Fifth Circuit in Teas v. Twentieth Century-Fox Film Corp., 413 F. 2d 1263, 1266 (5th Cir. 1969). See also Jacksonville Blow Pipe Co. v. Reconstruction Fin. Corp., 244 F.2d 394 (5th Cir. 1957).

the prejudice of Heller. Rule 24(b) specifically provides that "[i]n exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Such prejudicial delay would clearly result here would I to permit intervention.

Weiss' application to intervene is accordingly denied.

### Conclusion

The foregoing shall constitute the court's findings of fact and conclusions of law pursuant to F.R.Civ.P. Rule 52(a).

The parties are directed to settle an order on two days notice providing for an injunction in accordance with the terms of this opinion.