*262
 
 Opinion
 

 ELKINGTON, J.
 

 Plaintiffs United States Overseas Airlines, Inc., Ocean Air Tradeways, Inc., Ocean Air Tradeways, a partnership, Airpower Overhaul, Inc., Canamex Corporation, C & J Aircraft Leasing, a partnership, and the trustees in bankruptcy of some of them, commenced what we shall term the “California action” against the several defendants to whom, for convenience, we shall refer in the singular, as Heller.
 
 [1]
 
 One Dr. Ralph Cox, who otherwise appears to have played a prominent part in that and related litigation, was not named as a plaintiff.
 

 The California action alleged “willful fraud and deceit” and “conspiracy to defraud.” By it, the plaintiffs sought to recover from Heller compensatory damages of $130 million, and punitive damages of $250 million. It was one of many such actions commenced by Dr. Ralph Cox and the instant plaintiffs, or some of them, or affiliated entities or persons, against Heller in relation to a 1962 loan of $1.7 million made by Heller to plaintiff United States Overseas Airlines, Inc., upon security or guaranties of the other plaintiffs or most of them, and Dr. Ralph Cox. An abbreviated history of those proceedings may be gleaned from the following excerpts from the opinion of Judge Arnold Bauman in
 
 Walter E. Heller & Company, Inc.
 
 v.
 
 Cox
 
 (S.D.N.Y. 1974) 379 F.Supp. 299, to which opinion general reference is also made:
 

 “USOA[
 
 2
 
 ] defaulted on its obligations from the very outset. The first installment of the loan was only partially paid, and thereafter not one installment was paid in its proper amount or when due. Nonetheless, Heller refrained from declaring a default until July, 1965 at which time it accelerated the entire amount outstanding and began pursuit of collection by, among other things, the sale of collateral. From that point on, Heller became embroiled in one litigation after another, faced time and again ‘with the most frivolous challenges, harassments and dilatory maneuverings imaginable designed to frustrate and prevent Heller from recovering the monies owed to it.’ To date there have been at least 15 separate major
 
 *263
 
 litigations and proceedings in 10 different courts throughout the country.” (Pp. 302-303.)
 

 “[The 14th such action was commenced in the] U.S. District Court, Southern District of New York[
 
 3
 
 ]—This action was brought by Heller to recover the deficiency remaining on the USOA indebtedness based on the guarantees of Cox and OAT. I presided over this trial which commenced on January 24, 1972. Cox and OAT defended the action by raising a host of claims including usury, improper sales of collateral, alleged fraud in the inducement and a general massive conspiracy to seize control of USOA. This last claim was so utterly lacking in merit that I rejected it without discussion.
 

 . “The fifteenth and most recent litigation, presently pending, deserves a more detailed examination in view of its significance to the case at bar.
 

 “On June 1, 1973 an action was brought in California Superior Court on behalf of OAT, Canamex, C & J and the trustees in bankruptcy of USOA, APO and OAT, Inc. seeking $380,000,000 in damages from Heller, Twentieth Century and others for an alleged conspiracy to seize control of and destroy USOA and its affiliates. [This is the California action of the instant appeal.]
 

 “An examination of the California complaint clearly discloses that its basic thrust is the same as the action litigated before me as well as in numerous other courts throughout the country. It charges a complex theory of conspiracy among the defendants to seize control of USOA ‘through a scheme of fraud calculated to force the principal owners of the company to sell their stock to them [the defendants] at a low figure.’
 

 “It is in response to the filing of this action that Heller has returned to this court to request that I ‘protect and effectuate’ my prior judgment by granting: (i) An injunction against the further prosecution of the California action against Heller by Cox, OAT and those in active concert or participation with them, (ii) A ‘bill of peace’ prohibiting the institution of further actions against Heller arising out of 1962 loan transaction and subsequent collection efforts to the extent to which these actions related to matters previously litigated.
 

 
 *264
 
 “I have concluded that both requests should be granted.” (Pp. 305-306.)
 

 “It seems utterly clear that no issues have been raised in the California litigation not previously raised, argued and adjudicated in the previous litigation in this court.” (P. 308.)
 

 “As discussed previously, Heller has been subjected, over a nine year period, to at least fifteen different litigations designed to prevent its recovery of the loan to USOA. I find, without reservation or equivocation, that Cox instituted each and every one of them in bad faith. He has added an unusual talent for lying to his contempt for the judicial process. His imagination in exploiting the courts as a means of harassing, intimidating and impeding Heller in the collection of its money is truly spectacular. Over and over, Cox has ignored orders of this court to appear for depositions in aid of judgment as well as various conferences and hearings. Having asked his lawyer to communicate my warnings no less than five times, I finally adjudged Cox in contempt of court on April 2, 1974. Even this has not induced him to come forward.” (P. 309.) (Fns. omitted.)
 

 Contemporaneously with the foregoing opinion Judge Bauman made and entered his injunctive decree as follows:
 

 “Ordered, Adjudged And Decreed, that Ralph Cox, Jr. and Ocean Air Tradeways and their officers, agents, servants, employees and attorneys, and
 
 those in active concert or participation with them to whom notice of such injunction shall come
 
 [our emphasis], be and they hereby are permanently enjoined and prohibited from: (1) instituting, maintaining or prosecuting any action or claim, either directly or indirectly, at law or in equity, against Walter E. Heller & Company, Inc. or any of its affiliates, officers, directors, agents, employees or attorneys: (a) arising from or with respect to a certain 1962 loan transaction between Heller and United States Overseas Airlines, Inc., or (b) arising from or with respect to any collection efforts heretofore pursued by Heller in connection with said loan transaction; including, without limitation of (a) and (b), that certain action pending in the Superior Court of the State of California, County of Monterey, entitled
 
 C.R.E. Smith, Trustee in Bankruptcy of the Estate of Airpower Overhaul, Inc., et al. v. Walter E. Heller & Company, Inc., et al.
 
 [emphasis in original]; and (2) from instituting, maintaining or prosecuting any other litigation similar to the action heretofore adjudicated herein or taking any other further similar
 
 *265
 
 or different action designed or intended to deprive Heller of sums and amounts due it under the Final Judgment entered herein on June 5, 1972.”
 
 [4]
 

 The foregoing decree is now final, and no contention is made that it is invalid or ineffective in any way.
 
 [5]
 
 The only dispute, as will hereafter appear, is whether the plaintiffs of the California action are among those enjoined thereby. Nor is any contention made that the trustees in bankruptcy of some of the plaintiffs stand in a more favorable, or different, position than would those plaintiffs alone.
 

 Heller had appeared in the California action, and upon entiy of the federal court’s injunctive decree, had communicated with the plaintiffs as follows: “Inasmuch as it is quite clear that all of the plaintiffs in
 
 Smith
 
 v.
 
 Heller
 
 [the California action] are in privity with Ralph Cox, Jr. and co-plaintiff Ocean Air Tradeways partnership, are acting in active concert and participation with them, and are thus enjoined from prosecuting the
 
 Smith
 
 v.
 
 Heller
 
 action,
 
 we are refraining from serving any answer
 
 therein on the assumption that the action will be discontinued as against Walter E. Heller & Company, Inc., Walter E. Heller Factors, Inc., Walter E. Heller & Company of California, Inc., and Edmund M. Duncan.
 
 If you have any contrary intent, please advise us
 
 forthwith.” (Italics added.) The letter went unanswered.
 

 
 *266
 
 As contended by Heller in the superior court, and here: “For two full years thereafter, no response or other communication of any nature whatsoever was received by any representative of the Heller defendants from plaintiffs’ counsel or from anyone else representing plaintiffs, until a copy of a Request for the Entry of a Default was received by Heller’s New York counsel on July 7, 1976, only two days prior to the actual entry of the default herein against Heller and Heller California .... Plaintiffs did not serve Heller’s California counsel with the Request for Entry of Default . . . despite their prior appearance in the case . . . and despite the requirements of Code Civ. Pro. § 587.” (Fn. omitted.) It was, and is, also contended that such irregular notice made it impossible for Heller to take steps to prevent the default’s entiy.
 

 The record further discloses that contemporaneously with plaintiffs’ request for entry of Heller’s default, plaintiff Ocean Air Tradeways, a partnership, expressly named in the federal injunctive decree as a party, voluntarily withdrew by “dismissing” itself from the action.
 

 Thereafter Heller moved, according to Code of Civil Procedure sections 473 and 581a, respectively, to set aside the default, and to dismiss the California action. During the proceedings on the motions Heller added an “additional ground” for the action’s dismissal. The additional ground was that under its “inherent powers” the superior court “should not countenance such a contemptuous act [in reference to the U.S. District Court’s injunctive decree] . . . by . . . permitting the continued prosecution of this action as against the Heller defendants.”
 

 The superior court thereafter entered its orders, (1) setting aside the default of Heller, and (2) dismissing the action as to Heller. It is the plaintiffs’ appeal from those orders which is presently under consideration by us.
 

 The order dismissing the action as to Heller recited that the motion “to dismiss this action for failure to prosecute and pursuant to Code of Civil Procedure § 581a be, and hereby is, granted, and that said action be and hereby is dismissed as to said defendants [Heller],. . .” But we choose first to consider the issue raised by Heller whether the superior court, and this court, “should . . . countenance such a contemptuous act by . . . permitting the continued prosecution of this action as against the Heller defendants.” If, on the record before us
 
 as a matter of law
 
 the superior court should have dismissed the action for that reason, it is of no
 
 *267
 
 consequence that the order of dismissal was “pursuant to Code of Civil Procedure § 581a. . . .”
 

 It has long been the rule that: “The fact that the action of the court may have been based upon an erroneous theory of the case, or upon an improper or unsound course of reasoning, cannot determine the question of its propriety. No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.”
 
 (Davey
 
 v.
 
 Southern Pacific Co.,
 
 116 Cal. 325, 329 [48 P. 117]; see also
 
 International etc. Workers
 
 v.
 
 Landowitz,
 
 20 Cal.2d 418, 423 [126 P.2d 609];
 
 Sequoia Pine Mills, Inc.
 
 v.
 
 Superior Court,
 
 258 Cal.App.2d 65, 68-69 [65 Cal.Rptr. 353];
 
 People
 
 v.
 
 Evans,
 
 249 Cal.App.2d 254, 257 [57 Cal.Rptr. 276];
 
 Harley
 
 v.
 
 Superior Court, 226
 
 Cal.App.2d 432, 435 [38 Cal.Rptr. 72];
 
 Maxon
 
 v.
 
 Security Ins. Co.,
 
 214 Cal.App.2d 603, 610 [29 Cal.Rptr. 586];
 
 Snider
 
 v.
 
 Snider,
 
 200 Cal.App.2d 741, 756 [19 Cal.Rptr. 709];
 
 Hunter
 
 v.
 
 Sparling,
 
 87 Cal.App.2d 711, 721 [197 P.2d 807];
 
 El Centro Grain Co.
 
 v.
 
 Bank of Italy, etc.,
 
 123 Cal.App. 564, 567 [11 P.2d 650]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 226, pp. 4215-4216, “If the
 
 decision
 
 of the lower court is right, the judgment or order will be affirmed regardless of the correctness of the grounds upon which the court reached its conclusion.”)
 

 The first of the appeal’s issues will thus properly be stated as follows: Was the decree of the federal court
 
 permanently enjoining
 
 —“Ralph Cox, Jr. and Ocean Air Tradeways and their officers, agents, servants, employees and attorneys, and those in active concert or participation with them . . . from . . . instituting, maintaining or prosecuting any action or claim, either directly or indirectly, at law or in equity, against . . . Heller . . . arising from or with respect to a certain 1962 loan transaction between Heller and United States Overseas Airlines, Inc.”—binding on the remaining plaintiffs of the California action?
 
 [6]
 

 
 *268
 
 We advert again to the second reported decision of Judge Bauman (379 F.Supp. 299, 308) wherein it is stated:
 

 “Plaintiffs in the California litigation, Canamex, C & J and the trustees in bankruptcy for APO, OAT, Inc. and USOA have specially appeared in order to argue that the California actions may not be enjoined absent a finding of ‘privity’ between them and the defendants [s/c] in the previous litigations: Cox and OAT. This contention misinterprets the nature of the relief sought by Heller. What is sought here is not an injunction against the continuance of the California suit
 
 per se;
 
 it is rather an injunction restraining Cox and OAT from continuing to prosecute that suit.
 

 “Upon issuance of an injunction, it will, of course, become binding ‘upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them. . . .’ Rule 65(d), F.R.Civ.P. While Heller has interpreted the term ‘in active concert or participation’ to encompass Canamex, C & J and the two trustees, I decline to make specific reference to these parties in the order of the court. I choose instead to limit the injunctive decree to ‘Cox, OAT, their officers, agents, servants, employees and attorneys, and
 
 those in active concert or participation with them.’
 
 The applicability of this language to the parties in question is best left to a forum in which they are named as parties. The California plaintiffs should not, however, infer from this limitation that they may not be bound by the injunction that will issue. My refusal to specifically name them is due solely to Heller’s failure to make them defendants in this action and not to a determination of lack of‘privity.’ ” (Fns. omitted.)
 

 And we emphasize that no contention is made that Judge Bauman’s injunctive decree is for any reason invalid. As pointed out, it is simply argued that it does not affect the plaintiffs remaining in the California action after Ocean Air Tradeways, a partnership (expressly named in the injunctive decree), voluntarily withdrew therefrom.
 

 As the forum thus charged with the determination whether the plaintiffs of the California action were “in active concert or participation with” Dr. Ralph Cox and Ocean Air Tradeways, a partnership, in respect of the action’s subject matter, we look to certain judicial admissions, and final judicial determinations, of the record.
 

 A judicial admission is found in plaintiffs’ complaint of the California action. It follows:
 

 
 *269
 
 “In 1962 and for many years before, United States Overseas Airlines was a supplemental airline operating on authorities from the Civil Aeronautics Board of the United States government.
 
 The plaintiff interests functioned together to make up the overall organization that was the airline.
 
 The plaintiff corporations and partnerships furnished services to USOA as follows: Airpower Overhaul, Inc. (hereinafter referred to as 'APO’) operated shops for repair, maintenance and overhaul of aircraft engines for USOA and other customers within the commercial aviation industry; Ocean Air Tradeways, Inc., (hereinafter referred to as ‘OAT, Inc.’) owned improved real property which was leased to APO; Canamex Corporation (hereinafter referred to as ‘Canamex’) owned one aircraft which it leased to USOA; Ocean Air Tradeways, a partnership, (hereinafter referred to as ‘OAT partnership’) provided some management services and financing to USOA; C & J Aircraft Leasing (hereinafter referred to as ‘C & J’) came into existence in 1964 and owned five aircraft which it leased to USOA.
 
 All of the plaintiff entities were affiliated either through common ownership, wholly or in part, or as parent and subsidiary, . .
 
 .” (Italics added.)
 

 Another such judicial admission of plaintiffs appears in the record of the superior court hearing. There, referring to Dr. Ralph Cox, the remaining party expressly named as being bound by the federal injunctive decree, counsel for plaintiffs stated: “Dr. Cox was originally funding the [California] action at the outset of this case; . . .” And the statement was neither unintended, nor erroneous, nor inadvertent, for in their briefs on this appeal plaintiffs iterate that “Dr. Cox had originally funded the lawsuit, . . .” Thus it is admitted that Dr. Ralph Cox himself, and not the plaintiffs, paid the expenses and attorney fees incidental to the commencement of the California action against Heller.
 

 Such a judicial admission may, as is the case here, be an allegation of a pleading or an attorney’s concession or stipulation to facts. “[It] is not merely evidence of a fact; it is a conclusive concession of the truth of a matter which has the effect of removing it from the issues.” (Witkin, Cal. Evidence (2d ed. 1966) §§ 501, 505, pp. 472, 475-476, and see authority there collected.)
 

 Additionally there were before the superior court final and conclusive factual determinations expressly relating to Dr. Ralph Cox and Ocean Air Tradeways, a partnership, as found in the reported decisions of
 
 Walter E. Heller & Company
 
 v.
 
 Cox, supra,
 
 343 F.Supp. 519, and
 
 Walter E. Heller & Company, Inc.
 
 v.
 
 Cox, supra,
 
 379 F.Supp. 299. In
 
 *270
 
 the latter case the court found (p. 309) “without reservation or equivocation, that Cox instituted each and every one of them [i.e., the 15 actions including the instant California action] in bad faith.”
 

 Plaintiffs’ continuous “active concert or participation with” Dr. Ralph Cox and Ocean Air Tradeways, a partnership, was again demonstrated at the oral argument of this appeal. Bill Smalley of Tulsa, Oklahoma, who had been attorney, or of counsel, for Dr. Ralph Cox and Ocean Air Tradeways, a partnership, in both of the New York actions (see 379 F.Supp. 299; 343 F.Supp. 519), here appeared, of counsel, for plaintiffs.
 

 It thus was established, as a matter of law, that the plaintiffs of the California action were “in active concert or participation with” Dr. Ralph Cox and Ocean Air Tradeways, a partnership, in the commencement and maintenance of the California action against Heller. No contrary conclusion could reasonably be drawn.
 
 [7]
 

 The remaining question before us is whether, by reason of the foregoing, the superior court was obliged to dismiss plaintiffs’ California action.
 

 It is observed that the first of Judge Bauman’s decisions (343 F.Supp. 519) determined precisely the same issues as were later tendered by the complaint of the California action. (See
 
 Walter E. Heller &
 
 Company,
 
 Inc.
 
 v.
 
 Cox, supra,
 
 379 F.Supp. 299.) That judgment was a final adjudication, in effect at the time Dr. Ralph Cox instituted his 15th action against Heller in California.
 

 28 United States Code section 2283, expressly authorizes federal courts to enjoin proceedings in a state court “where necessary in aid of its [earlier acquired] jurisdiction, or to protect or effectuate its judgments.” Under this authority injunctions to prevent relitigation in state courts of issues previously and finally adjudicated by federal district courts have been upheld and enforced. (See
 
 Mitchum
 
 v.
 
 Foster,
 
 407 U.S. 225, 231-238 [32 L.Ed.2d 705, 711-715, 92 S.Ct 2151];
 
 Julian
 
 v.
 
 Central Trust Co.,
 
 193 U.S. 93, 112 [48 L.Ed. 629, 639, 24 S.Ct. 399];
 
 International Ass’n of Mach.
 
 
 *271
 

 & Aero. Wkrs.
 
 v.
 
 Nix,
 
 512 F.2d 125, 130-131;
 
 State of Oklahoma
 
 ex rel.
 
 Wilson
 
 v.
 
 Blankenship,
 
 447 F.2d 687, 693 [cert. den., 405 U.S. 918 (30 L.Ed.2d 787, 92 S.Ct. 942)];
 
 Sperry Rand Corporation
 
 v.
 
 Rothlein,
 
 288 F.2d 245, 249;
 
 Berman
 
 v.
 
 Denver Tramway Corp.,
 
 197 F.2d 946, 950;
 
 Jackson
 
 v.
 
 Carter Oil Co.,
 
 179 F.2d 524, 526 [cert. den., 340 U.S. 812 (95 L.Ed. 597, 71 S.Ct. 39)];
 
 Hesselberg
 
 v.
 
 Aetna Life Ins. Co.,
 
 102 F.2d 23, 27;
 
 Baker
 
 v.
 
 Gotz,
 
 415 F.Supp. 1243, 1249-1251 [affd., 546 F.2d 415];
 
 McCubbrey
 
 v.
 
 Boise Cascade Home & Land Corp.,
 
 71 F.R.D. 62, 65, fn. 3; and see 42 Am.Jur.2d, Injunctions, § 234, p. 1022, and authority there collected.)
 

 It is sometimes held that such an injunction of a court of one jurisdiction forbidding maintenance of an action in another has an in personam effect only, leaving the latter court with a discretion, under flexible principles of comity, to allow or deny itself as a forum. (See
 
 Kleinschmidt
 
 v.
 
 Kleinschmidt,
 
 343 Ill.App. 539 [99 N.E.2d 623].) Other jurisdictions adopt a sterner position, such as: “We have no hesitation in deciding upon principles of comity that so long as the injunction remains in force issued by the chancery court of [Tennessee] against... a citizen of said jurisdiction, he will not be permitted to proceed with his suit in the courts in Mississippi.”
 
 (Fisher
 
 v.
 
 Pacific Mut. Life Ins. Co.,
 
 112 Miss. 30 [72 So. 846, 848].)
 

 California has long followed the latter practice—that one enjoined by another jurisdiction from maintaining an action in this state
 
 “will not be permitted to proceed with his suit
 
 . . . .” (Italics added.) In
 
 Sharon
 
 v.
 
 Sharon,
 
 84 Cal. 424 [23 P. 1100], as here, a federal court had enjoined a state judicial action, but the state’s trial court had nevertheless allowed it to proceed to judgment. Relying upon, and quoting from, even earlier authority
 
 (Engels
 
 v.
 
 Lubeck, 4
 
 Cal. 31), the high court reversed the judgment, stating (p. 432):
 

 “ ‘It is said, however, that the injunction operates upon the party, and not upon the court, and that therefore the court of the seventh district was right not to regard it, and the defendant’s remedy is by attachment for contempt in the fourth district. We prefer to lay down a different rule. . . . [W]e think that the propriety of the observance of the injunction, by the court to whose notice it is brought, may be properly placed upon higher grounds.
 
 The comity which one court owes to another of concurrent jurisdiction should always prevent the one from lending itself as an instrument in permitting a contempt of the process of the other. The one should regard the party attempting to proceed in defiance of the
 
 
 *272
 

 authority of the other as laboring under the same disability to ask for the action of the court as if he was an alien enemy, or under the ban of a decree of outlawry at common law.
 
 Such being the opinion we entertain upon this point, we cannot permit the judgment to stand.’ ” (Italics added.)
 

 And of course: “Full faith and credit must be accorded a judgment of the federal court. . . . Such a judgment has the same effect in the courts of this state as it would in a federal court.”
 
 (In re Bailleaux,
 
 47 Cal.2d 258, 260 [302 P.2d 801] [cert. den., 353 U.S. 957 (1 L.Ed.2d 908, 77 S.Ct. 863), overruled on other grounds,
 
 In re Russell,
 
 12 Cal.3d 229, 235 (115 Cal.Rptr. 511, 524 P.2d 1295)].)
 

 Under the clear authority of
 
 Sharon
 
 v.
 
 Sharon, supra,
 
 84 Cal. 424, the superior court of the case before us was required, according to the federal court’s injunctive decree, not to allow the continued maintenance of plaintiffs’ action. The order of dismissal was for that reason proper, and without error.
 

 It becomes unnecessary to our disposition of the appeal to consider other of the points, theories and arguments presented and relied upon by the several parties.
 

 The order and judgment of dismissal is affirmed. The appeal from the order granting motion to set aside default having become moot, it is dismissed. Heller will recover costs of the appeal.
 

 Racanelli, P. J., and Newsom, J., concurred.
 

 A petition for a rehearing was denied July 12, 1978.
 

 [1]
 

 There was one defendant, Stanley D. Weiss, who is not included by us within the Heller group. He was separately represented by counsel, and is not a party to the instant appeal, or to either of the orders from which the appeal was taken.
 

 [2]
 

 As used in Judge Bauman’s opinion, the abbreviated characterizations refer to the plaintiffs of the California action and Dr. Ralph Cox, as follows: USOA = United States Overseas Airlines, Inc.; OAT = Ocean Air Tradeways, a partnership; OAT Inc. = Ocean Air Tradeways, Inc.; APO = Airpower Overhaul, Inc.; C&J = C & J Aircraft Leasing; Cox = Dr. Ralph Cox.
 

 [3]
 

 The opinion of that action is reported in
 
 Walter E. Heller
 
 &
 
 Company
 
 v.
 
 Cox
 
 (S.D.N.Y. 1972) 343 F.Supp. 519 (affd. (2d Cir. 1973) in 486 F.2d 1398, without opn. [cert. den., 414 U.S. 827 (38 L.Ed.2d 61, 94 S.Ct. 46)]).
 

 [4]
 

 The injunctive decree’s phrase “in active concert or participation with them” is found in rule 65(d), Federal Rules of Civil Procedure; delineating the “Form and Scope of Injunction or Restraining Order.” (See 28 U.S.C.)
 
 Golden State Bottling Co.
 
 v.
 
 NLRB,
 
 414 U.S. 168, 179 [38 L.Ed.2d 388, 400, 94 S.Ct. 414], states: “Rule 65(d) ‘is derived from the common-law doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in “privity” with them, represented by them or subject to their control.’ ” (To the same effect see
 
 Regal Knitwear Co.
 
 v.
 
 Board,
 
 324 U.S. 9, 14 [89 L.Ed. 661, 666-667, 65 S.Ct. 478];
 
 Hodgson
 
 v.
 
 Humphries,
 
 454 F.2d 1279, 1284;
 
 Crane Boom Life Guard Co.
 
 v.
 
 Saf-T-Boom Corporation,
 
 362 F.2d 317, 321-322 [4 A.L.R.Fed. 204] [cert. den., 386 U.S. 908 (17 L.Ed.2d 782, 87 S.Ct. 853)];
 
 Petersen
 
 v.
 
 Fee Intern., Ltd.,
 
 435 F.Supp. 938.) And the plaintiffs of the instant action are patently persons “to whom notice of [the injunctive decree] shall come”; no contrary contention is made.
 

 [5]
 

 As stated by Judge Bauman in
 
 Walter E. Heller & Company, Inc.
 
 v.
 
 Cox, supra,
 
 379 F. Supp. 299, 307: “Recent cases leave no doubt that [28 U.S.C.] § 2283 as it exists today permits a federal court to enjoin the relitigation of cases and controversies which it has fully adjudicated in order to protect or effectuate its judgment. State of Oklahoma ex rel. Wilson v. Blankenship, 447 F.2d 687, 693 (10th Cir. 1971); Woods Exploration & Pro. Co. v. Aluminum Co. of America, 438 F.2d 1286, 1311 (5th Cir. 1971); Note, Federal Power to Enjoin State Court Proceedings, 74 Harv.L.Rev. 726 (1961). This serves the commendable purpose of preventing continued litigation of the same cause of action and it assures the successful party in a federal court that he will not be deprived of his victory by a later contrary state ruling. Developments in the Law—Injunctions, 78 Harv.L.Rev. 993, 1052 (1965).” Further reference is made to the opinion for the comprehensive authority upon which it is based.
 

 [6]
 

 Following filing of the parties’ briefs on this appeal they were invited by the court to furnish further written argument “on the issue whether as a matter of law the record establishes plaintiffs to have been in ‘active concert or participation’ with Ralph Cox, Jr., and Ocean Air Tradeways in relation to the subject matter of Judge Bauman’s injunctive decree in the proceedings reported in 379 F.Supp. 299.”
 

 [7]
 

 We continue in our awareness of the record indication that on the day Heller’s default was requested, Ocean Air Tradeways, a partnership, removed itself from the California action by voluntarily dismissing itself as a plaintiff therein. While the dismissal probably had some tactical purpose, it detracted nothing from the uncontroverted proof that the remaining plaintiffs also were “in active concert or participation with” Ocean Air Tradeways, a partnership, and Dr. Ralph Cox, and with each other, in the commencement and maintenance of the California action.