In re Tom CATES d/b/a Oil Patch Service and Rental, Alleged Debtor.

Bankruptcy No. 85–00455–B1–5.

United States Bankruptcy Court, S.D. Texas, Brownsville Division.

May 8, 1986.

Richard D. Schell, Wiley, Hale & Fleurinet, Harlingen, Tex., for Petitioning Creditor.

Robert B. McLeaish, McAllen, Tex., Robert C. Maley, Jr., Sheinfeld, Maley, & Kay, Houston, Tex., for Alleged Debtor.

## MEMORANDUM AND ORDER

MANUEL D. LEAL, Bankruptcy Judge.

In this contested involuntary petition, the major issues are whether the claim of the sole petitioning creditor is subject to bona fide dispute, whether there are twelve or more creditors of the alleged debtor and whether the debtor was generally paying his debts as they became due. Because the petitioning creditor has not established the absence of a bona fide dispute with respect to its claim, we DENY and DISMISS the involuntary petition.

### FACTS

Budd Leasing Corp. (Budd) filed an involuntary petition against Tom Cates d/b/a Oil Patch Service and Rental (Cates) on January 23, 1985. Cates entered into a lease agreement with Western Lease Banc, lessor, on July 31, 1980 for a four year term. On the same date Cates signed an affidavit which was a disclaimer of liability in favor of the lessor Western Bank. Cates was to make monthly payments of $2,372.96 for the following equipment:

Three chemical mixing tanks MT7912
Five mud cleaners, complete; MC7911
Four pumping units, complete
400 feet 6" pipe
20 6" Victaulic ells (90°)

Cates received delivery of the equipment on July 31, 1980; the lease term commenced August 1, 1980. On August 4, 1980, Western Banc assigned all rights in the lease to Patagonia Leasing, Inc. subject to the Cates lease and a conditional option agreement between lessor and lesee. Patagonia assigned its interests to Budd on March 31, 1981.

Cates testified that the equipment was defective and has not been used since February, 1981. He further testified that he notified both Patagonia Leasing and Budd to pick up the equipment. This fact was not contested by Budd's witness. Cates made a minimum of twenty-four payments to Budd. When he defaulted the parties entered into a new payment schedule. When this was unsuccessful, Budd referred the matter to its attorneys.

Budd filed a state court action in Harris County, Texas against Cates for the money owed. Venue was transferred to Hidalgo County. Rather than pursue its state court collection suit, Budd commenced the instant involuntary petition while keeping its state court action pending. The reasons given for the simultaneous bankruptcy filing were that Budd was afraid that Cates would leave the country and dissipate his assets before adjudication of the state court suit. Budd felt that by bringing a bankruptcy action all of Cates' assets could be preserved under the control of a Federal Court. Cates allegedly was in default under the lease in the amount of $47,000 as of the date of the filing of the involuntary petition.

## LEGAL DISCUSSION

The Court has jurisdiction of the instant case under 28 U.S.C. § 157(b)(2)(A)(1984). Congress expressly entitled chapter 3 of title 11 "case administration." Since the substantive statutory law on involuntary petitions is codified in § 303 of this chapter, the instant action is a core proceeding for it "concerns the administration of the estate." 28 U.S.C. § 157(b)(2)(A). No objection has been raised as to the jurisdiction of this Court to enter a final judgment in this matter.

As a general policy we will scrutinize the creditor's filing carefully because "the filing of an involuntary petition is an extreme remedy with serious consequences to the alleged debtor, such as loss of credit standing, inability to transfer assets and carry on business affairs, and public embarrassment." *In re Reid,* 773 F.2d 945, 946 (7th Cir.1985).

To this end, the Bankruptcy Amendments Act added the additional requirement that a petitioning creditor cannot prevail unless it shows that its claims are not subject to bona fide dispute. *In re Rubin,* 769 F.2d 611, 615 (9th Cir.1985). § 303(b)(1) now states

(b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a *bona fide dispute,* or an indenture trustee representing such holder, if such a claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

(2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $5000 of such claims.

The proponent of this amendment stated:

Under my amendment, the original filing of an involuntary petition could not be based on debts that are the subject of a good-faith dispute between the debtor and his or her creditors. In the same vein, the granting of an order of relief

could not be premised solely on the failure of a debtor to pay debts that were legitimately contested as to liability or amount.

I believe this amendment, although a simple one, is necessary to protect the rights of debtors and to prevent misuse of the bankruptcy system as a tool of coercion. I also believe it corrects a judicial misinterpretation of existing law and congressional intent as to the proper basis for granting involuntary relief.

130 Cong.Rec. S7618. (June 19, 1984) (Comments of Senator Baucus).

Cates contends that Budd's claim is subject to bona fide dispute. Several courts have enunciated standards in order to determine whether a claim is subject to bona fide dispute. One district court has applied the summary judgment standard stating "if the defense of the alleged debtor to the claim of the petitioning creditor raises material issues of fact or law so that a summary judgment could not be rendered as a matter of law in favor of the creditor on a trial of the claim, the claim is subject to bona fide dispute." *In re Stroop,* 51 B.R. 210, 212 (D.Colo.1985). Another court has stated that a bona fide dispute is a "conflict in which an assertion of a claim or right made in good faith and without fraud or deceit on one side is met by contrary claims or allegations made in good faith and without fraud or deceit on the other side." *In re Johnson Hawks, Ltd.,* 49 B.R. 823, 830 (Bankr.Haw.1985). The *Johnson Hawks* court further identified four factors to focus on. These are

1. The nature of the dispute.
2. The nature and the extent of the evidence and allegations presented in support of the creditor's claim and in support of the debtor's contrary claims.
3. Whether the creditor's claim and the debtor's contrary claims are made in good faith and without fraud or deceit.
4. Whether on balance the interests of the creditor outweighs those of the debtor.

*Id.* at 831.

■ Although the above factors may be helpful in certain circumstances, we decline to follow them in this case because to do so would require this Court to inquire into the validity of pending state court claims with potential res judicata or collateral estoppel ramifications. Therefore, this Court will apply the *Stroop* standard. We find that Budd could not obtain summary judgment on the evidence presented at the trial. Initially, we note that there is a fact question as to whether the lease term ended on ˌ.ugust 1, 1984. It is conceivable that Cates was on a month to month tenancy and Cates' notification to Budd to pick up the equipment constituted an effective termination of the month to month tenancy under Texas law. A second fact issue is whether the disclaimer forecloses Cates from challenging the defectiveness of the equipment.

■ The equities of this case, particularly in light of recent Circuit court opinions on the issues, reinforce the Court's conclusion that the involuntary petition should be dismissed. The Eighth Circuit recently stated that "this case reflects efforts by a single creditor to use the Bankruptcy Court as a forum for the trial and collection of an isolated disputed claim, a practice condemned in prior decisions. There currently exists, in fact, a pending case in state court in which appellant is attempting to enforce the same claim against [the alleged debtor] as has been asserted in this case." *In re Nordbrock,* 772 F.2d 397, 399 (8th Cir. 1985).

This is the situation in our case. Budd commenced and is currently maintaining a pending state court lawsuit to collect on the same claim which it alleges in our Court. "A creditor does not have a special need for bankruptcy relief if he can go to state court to collect a debt." *Id.* at 400. Similarly, in our case, Budd has a state forum which is well equipped to entertain its Texas contract claims.

Having reached this conclusion, the Court does not have to address either the number of creditors or the solvency issue.

Based on the presence of a bona fide dispute, this Court DENIES and DISMISSES Budd Leasing's involuntary petition and under § 303(i) enters judgment against the petitioner and in favor of the alleged debtor for costs and reasonable attorney's fee.

IT IS SO ORDERED