668 F.Supp. 578 (1987)
CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, as Administrator for Federal Deposit Insurance Corporation
v.
Morris WINDHAM.
Civ. A. No. B-87-00015-CA.
United States District Court, E.D. Texas, Beaumont Division.
July 7, 1987.
*579 *580 Mark A. Shaiken, Mayer, Brown & Platt, Houston, Tex., for plaintiff.
Glenn H. Steele, Jr., Craig H. Clendenin, Provost, Umphrey, Swearingen & Eddins, Port Arthur, Tex., for defendant.

MEMORANDUM OPINION
COBB, District Judge.
On January 7, 1987, Continental Illinois National Bank and Trust Company of Chicago (CINB), as administrator for the Federal Deposit Insurance Corporation (FDIC), filed a complaint against Morris B. Windham, seeking judgment in excess of 1.5 million dollars, based on a guaranty agreement executed by Windham, guarantying a debt owed by Beaumont Oil, Inc. to FDIC. On February 12, 1987, Windham, acting pro se, filed defendant's original answer and counterclaims. The FDIC subsequently filed a motion to dismiss the defendant's counterclaims, which is presently before the court. For the reasons set forth herein, FDIC's motion is hereby granted.

I.
In 1981, CINB lent in excess of fifteen million dollars to Beaumont Oil, Inc., and Beaumont Oil executed a promissory note in return. The Beaumont Oil note was guaranteed by Windham, president and owner of 100 percent of the shares of Beaumont Oil. On September 26, 1984, the 1981 note was sold and transferred from CINB to FDIC. CINB continues to act as administrator for the FDIC with respect to collection of the Beaumont Oil and Windham obligations. On February 28, 1984, Beaumont Oil failed to make payment then due, and subsequently refused FDIC's demand for payment in full.
On September 19, 1986, an involuntary Chapter VII proceeding was commenced against Beaumont Oil by the filing of an involuntary Chapter VII petition in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. FDIC was one of the petitioning creditors. In its October 9, 1986, answer, Beaumont Oil admitted in that bankruptcy case it owed the debt to FDIC. Further, on October 30, 1986, a deposition of Morris Windham was conducted in the Beaumont Oil bankruptcy proceeding. In the course of the deposition in which he was represented by counsel, Windham was asked if *581 he disputed Beaumont Oil's debt to CINB or FDIC. In his response, Windham confirmed the validity of the debt owed to FDIC by Beaumont Oil.
On January 7, 1987, FDIC filed the present action, seeking judgment against Windham on his guaranty of the principal amount of $1,575,443.17 plus accrued interest, costs and fees. On February 12, 1987, Windham, acting pro se, filed his defendant's original answer and counterclaim, which sets out 25 paragraphs of purported disputes, ranging from fraud, misrepresentation, duress, usury, deceptive trade practices, unconscionability, and civil RICO violations, to breach of warranty. The FDIC, in its response, filed a motion to dismiss the defendant's counterclaims.

II. JUDICIAL ESTOPPEL
The court finds that Windham is barred by the doctrine of judicial estoppel from raising counterclaims which contradict his prior admissions as to the validity of the debt owed to FDIC. The doctrine of judicial estoppel provides that a party who, for the purpose of maintaining his position in litigation, has deliberately represented a thing in one respect, is estopped to contradict his own representation by giving the same thing another aspect in litigation with the same adversary as to the same subject matter. Texas Co. v. Gulf Refining Co., 26 F.2d 394, 397 (5th Cir.1928); accord, Livesay Industries v. Livesay Window Co., 202 F.2d 378, 382 (5th Cir.1953). In Long v. Knox, 155 Tex. 581, 291 S.W.2d 292 (1956), the court stated:
Under the doctrine of judicial estoppel ... a party is estopped merely by the fact of having alleged or admitted in his pleadings in a former proceeding under oath the contrary to his assertions sought to be made ... Long, 291 S.W.2d at 295.
Elements of reliance and injury are not essential under judicial estoppel. Id.; Galerie des Monnaies of Geneva, Ltd. v. Deutsche Bank, A.G., 55 B.R. 253, 258 (Bankr.S.D.N.Y.1985). Furthermore, the sworn statement giving rise to judicial estoppel can occur in a deposition. Van Deusen v. Connecticut General Life Insurance Co., 514 S.W.2d 951, 956 (Tex.Civ. App.Fort Worth 1974, no writ).
Thus, the "essential function and justification of judicial estoppel is to prevent the use of intentional self-contradiction as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." Allen v. Zurich Insurance Co., 667 F.2d 1162, 1167 (4th Cir. 1982). Further, judicial estoppel is an appropriate basis to dismiss a counterclaim that is banned by previous sworn contrary statements. Wade v. Woodings-Verona Tool Works, Inc., 469 F.Supp. 465, 466-67 (W.D.Pa.1979).
In the instant case, Windham testified under oath in his deposition on October 30, 1987, that he did not dispute the indebtedness to FDIC. The question and response were as follows:
Q. ... Is it my understanding that you have no dispute with the debt of Continental?
A. None, none to my knowledge.
Furthermore, Beaumont Oil's answer to the bankruptcy petition admitted and did not dispute the allegation owed to the FDIC. Although Windham testified in his corporate capacity in his deposition, the answers given during his deposition may be attributed to Windham as well, since he was the president and sole shareholder of Beaumont Oil. As a result, the answers of Beaumont Oil acknowledging debt owed to the FDIC can be attributed to Windham to preclude Windham from asserting his counterclaims in the present case.

III. RES JUDICATA
For the theory of res judicata to prevail, there must be a showing that the prior litigation involved:
1. A final judgment on the merits;
2. The same parties (or their privies);
3. A situation arising from the same cause of action.
Brown v. Felsen, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).
In the present case, all three criteria have been met, so as to preclude Windham *582 from asserting his counterclaims. In an involuntary bankruptcy proceeding such as the Beaumont Oil bankruptcy, whether or not a debt is disputed is significant. In this respect, 11 U.S.C. § 303 provides:
(b) An involuntary case is commenced by the filing with the bankruptcy court of a petition under Chapter VII ... of this Title
(i) by three or more entities, each of which is either a holder of a claim against such person that is not contention as to liability or the subject of a bona fide dispute ...
In the case of In re Cates, 62 B.R. 179 (Bankr.S.D.Tex.1986), the court held that a claim is subject to a bona fide dispute if facts exist that would preclude the petitioning creditor from obtaining summary judgment on the claim. Id. at 181. By testifying under oath that there was no dispute with FDIC's claim, Windham acknowledged under oath that no material facts existed which would preclude FDIC from obtaining summary judgment on its claim. Therefore, the debt owed to the FDIC is not disputed. Further, the bankruptcy court's order for relief signed on February 26, 1987, establishes that the Beaumont Oil debt is not subject to a bona fide dispute.
Moreover, an order for relief pursuant to 11 U.S.C. § 303 is a final appealable order binding upon all parties and privies subject to it. In this respect, the court in Mason v. Integrity Insurance Co., 709 F.2d 1313 (9th Cir.1983), described the characteristics and ramifications of an order for relief as follows:
The procedure on a petition for an order for relief has many of the attributes of adversary proceedings governed by part VII of the bankruptcy rules ... In turn, the rules governing adversary proceedings are derived largely from the Federal Rules of Civil Procedure ... In a proceeding on an involuntary petition, the rules contemplate a procedure much like any other lawsuit: the petition for relief is treated as a complaint which must be answered by the debtor to avoid default, ... motions akin to those under Federal Rules of Civil Procedure 12 may be made, ... discovery is available, ... a hearing is held on evidence taken, ... the court must make findings of fact and conclusions of law, ... and, ... the court must enter judgment ... It is evident, then that the decision to enter an order for relief is prefaced by a procedure similar to that proceeding other final judgments in civil and criminal litigation.... Mason, 709 F.2d at 1313.
In addition to the procedural acknowledgement that an order for relief is an appealable order, we believe that the practical effect of the order compels such a conclusion. An order for relief, being a conclusive determination of the debtor's status as bankrupt, carries with it a great potential for irreparable injury if immediate appeal is not allowed.... Id. An adjudication and, concomitantly, an order for relief, is, ... a judgment in rem, a conclusive determination of the debtor's status in bankruptcy, and res judicata between the actual parties to the proceeding to all the facts and subsidiary questions of law on which it is based. Mason, 709 F.2d at 1315-16.
Thus, in the present case, the first criteria for barring Windham's claims by res judicata has been met in that an order for relief has been entered which is a final appealable order on the merits of the debt in dispute.
Windham cites In re All Media Properties, 5 B.R. 126 (Bankr.S.D.Tex.1980), for the proposition that:
The entry of an order for relief, agreed or otherwise, simply provides that the claims made the basis of the involuntary petition were not contingent as to liability. Because a claim is not contingent as to liability does not mean the claim cannot still be disputed.
However, Windham fails to note that 11 U.S.C. § 303, the basis for the above decision, was amended after the 1980 All Media opinion. In 1984, Congress amended § 303 to require that, in order to qualify as a creditor who can join in in an involuntary bankruptcy petition, the petitioning creditor's claim cannot be "the subject of a bona fide dispute ..." 11 U.S.C. § 303(b)(1). *583 See, 2 Collier on Bankruptcy, § 303.08(11)(b)(c) (15th Ed.1986). This amendment was recognized in In re Cates, 62 B.R. 179 (Bankr.S.D.Tex.1986). Thus, since 1984, a claim cannot be disputed if it is to qualify as a petitioning creditor's claim under § 303(b)(1), and FDIC's claim was adjudicated as not subject to a bona fide dispute when the agreed order for relief was entered.
The second criteria for finding Windham's counterclaims are barred by res judicata has also been met in the present case. Windham, as a guarantor on the promissory notes of Beaumont Oil, was in privity with the principal Beaumont Oil, and is bound by the prior adjudication of the debt owed by Beaumont Oil to the FDIC. The case of Walter E. Heller & Co. v. Cox, 343 F.Supp. 519 (S.D.N.Y.1972), affirmed, 486 F.2d 1398 (2d Cir.1973), cert. denied, 414 U.S. 827, 94 S.Ct. 46, 38 L.Ed.2d 61 (1973) is on point. In Cox, the plaintiff brought suit on a guarantee executed by Cox, the president, director and principal shareholder of the principal obligor, United States Overseas Airlines, Inc. (USOA). After USOA filed a Chapter 11 proceeding under the former Bankruptcy Act of 1898, the bankruptcy court dismissed for want of prosecution the counterclaims in fraud brought by USOA against the plaintiff, and allowed the plaintiff's claim. The district court, in the guaranty suit, held the guarantor Cox bound by res judicata to the judgment of the bankruptcy court. The court found that all the legal prerequisites to the application of of res judicata were met, and held that the guarantor Cox was bound by the prior adjudication involving the principal debtor, stating:
The privity of interest necessary to bind a party to the results of a prior proceeding to which he was not named a party can be established ... when it is shown that the defendant in the subsequent action was an officer, director, or the major shareholder of the corporate party in the first action ... It may also be established by showing that the party who is sought to be bound by the first judgment was actually a participant in and controlled the prior litigation. Finally, a guarantor is bound by a prior adjudication involving the principal debtor if the guarantor had notice of and an opportunity to participate in the prior proceeding. Cox, 343 F.Supp. at 524.
Accord, Astron Industrial Associates, Inc. v. Chrysler Motors Corp., 405 F.2d 958, 961 (5th Cir.1968). The court in Cox held that Cox, as president, director and principal shareholder, was in privity with USOA, was in full control of USOA in the bankruptcy proceedings, and had notice and an opportunity to participate in USOA's bankruptcy proceeding. Second, the court held that there was an identity of issues and therefore, ruled that Cox was bound by res judicata from contesting or counterclaiming against the plaintiff when the plaintiff sued Cox on the guaranty agreement.
In the case at bar, privity existed between Beaumont Oil and Windham. As in Cox, Windham, as the president, director, and sole shareholder of Beaumont Oil, was in full control of Beaumont Oil, and had notice and an opportunity to participate in Beaumont Oil's bankruptcy proceedings. Additionally, he directed and dictated Beaumont Oil's course of conduct in the bankruptcy action. In fact, Windham signed the agreed order for relief. Therefore, Windham is barred by res judicata to dispute the debt in question.
Finally, as to the third criteria for finding res judicata, the present action arose from the same cause of action as in the bankruptcy proceeding against Beaumont Oil. There is an identity of issues between the Beaumont Oil litigation and the Windham litigation. In both proceedings, the same debt is owing to the FDIC. Accordingly, Windham is barred by res judicata from relitigating the issue of the validity of the FDIC debt.

IV. COMPULSORY COUNTERCLAIMS
Pursuant to Rule 13(a) of the Federal Rules of Civil Procedure:
A counterclaim that arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim is compulsory, and falls under *584 Rule 13(a) ... 6 Wright & Miller, Federal Practice and Procedure § 1409 at 36 (1971).
Further, failing to plead a compulsory counterclaim bars any subsequent action on the counterclaim. Id., § 1417 at 94. In the case at bar, Windham's counterclaims amount to allegations of wrongful lending and collection practices. These counterclaims arise out of the loan to Beaumont Oil, and are derivative upon Beaumont Oil's rights against CINB and the FDIC. The court finds that the following counterclaims asserted by Windham were compulsory counterclaims in the Beaumont Oil bankruptcy proceedings and thus, when Beaumont Oil failed to raise these counterclaims, Beaumont Oil and anyone in privity with Beaumont Oil, including Windham, were barred from raising these counterclaims in any subsequent proceeding:
1. Beaumont Oil had 100% setoffs against FDIC;
2. Beaumont Oil was defrauded;
3. Misrepresentations were made in conjunction with the Beaumont Oil loan;
4. Usurious interest was charged under the loan;
5. The loan was executed under duress;
6. Breach of warranty;
7. Violations of various lender-related statutes occurred.
In this respect, the court in Bank of Montreal v. Kough, 430 F.Supp. 1243 (N.D. Cal.1977), in a suit on a guaranty, held that allegations of fraud, interference with business interest, and misrepresentation concerning the loan to a principal were compulsory counterclaims that were lost when not raised in a prior action on the guaranty. Thus, the court prohibited the guarantor from raising the allegations as counterclaims in a subsequent action by Bank of Montreal to enforce the prior judgment.
Furthermore, in the case of In re Ferri, 59 B.R. 656 (Bankr.E.D.N.Y.1986), the bankruptcy court held that bona fide counterclaims constituted a dispute that prohibited a creditor from participating in an involuntary bankruptcy petition. Thus, the counterclaims that Windham seeks to assert were resolved by the order for relief in the Beaumont Oil bankruptcy. Windham is therefore barred from raising these counterclaims in the present action.

V. THE COUNTERCLAIMS ARE PERSONAL TO BEAUMONT OIL AND CANNOT BE ASSERTED BY WINDHAM
A guarantor cannot raise defenses "personal" to the principal obligor. Continental Ill. Nat'l Bank & Trust Co. v. Stanley, 606 F.Supp. 558 (N.D.Ill.1985); Continental Ill. Nat'l Bank & Trust Co. v. Stanley, 585 F.Supp. 1385, 1388 (N.D.Ill.1984). In Continental Illinois National Bank and Trust Co. olf Chicago v. Stanley, 585 F.Supp. 1385 (N.D.Ill.1984), Jack Stanley was the controlling shareholder of his corporation and guaranteed its debt. GHR filed a Chapter 11 petition in bankruptcy. Continental brought suit against Stanley on his guaranty. Notwithstanding the bankruptcy of GHR, the court ruled that Stanley could not raise the personal defenses of GHR in a counterclaim against Continental. Id. at 1388. The instant action is indistinguishable. Regardless of whether Beaumont Oil is in bankruptcy, Windham as sole shareholder and guarantor cannot raise the defense of Beaumont Oil.
The following personal defenses of the principal obligor Beaumont Oil cannot be raised by Windham: Usury, Universal Metals & Machinery, Inc. v. Bohart, 539 S.W.2d 874 (Tex.1976); Breach of warranty, Hurst v. Stith Equipment Co., 133 Ga.App. 374, 210 S.E.2d 851 (1974); Jarecki Mfg. Co. v. Hinds, 295 S.W. 274 (Tex. Civ.App.Eastland 1927); Incapacity of principal, Bernstein v. Friedlander, 58 Misc.2d 492, 296 N.Y.S.2d 409 (Sup.1968); Statute of limitations, Escambia Chemical Corp. v. Rocker, 124 Ga.App. 434, 184 S.E.2d 31 (1971); Defective goods, El Paso Bank & Trust Co. v. First State Bank of Eustis, 202 S.W. 522 (Tex.Civ.App.El Paso 1918, writ ref'd n.r.e.); Forgery of maker's signature, Hopkins v. First National Bank at Brownsville, 551 S.W.2d 343 (Tex.1977, writ ref'd n.r.e.); Carlessness of bank in issuing loan, First National *585 Bank of Cedaredge v. Aspinwall, 44 Colo.App. 23, 613 P.2d 341 (1980, cert. denied); Claim of sham agreement, Linger v. Rocky Mountain Bank & Trust Co., 29 Colo.App. 334, 486 P.2d 29 (1971, cert. denied); Mistake, impossibility, or frustration of purpose, Glendale Fed. S. & L. Association v. Marina View Heights Development, Inc., 66 Cal.App.3d 101, 135 Cal. Rptr. 802 (Ct.App. 4th Dist.1977).
Additionally, TEX.BUS. & COM. CODE ANN. § 3.305 (1985) provides that a holder in due course takes an instrument free of "personal" defenses. Pursuant to § 3.305, the following defenses are personal: Unconscionability, Wood v. Pierce, 6 U.C.C.Rep. 163 (N.Y.Supp.1969); Fraud in factum, Federal Deposit Insurance Corp. v. Culver, 640 F.Supp. 725 (D.Kan.1986); Duress, Glenney v. Crane, 352 S.W.2d 773, 777-78 (Tex.Civ.App.Houston 1961, writ ref'd n.r.e.).
Thus, Windham as guarantor, like the defendant in Continental Illinois National Bank & Trust Co. v. Stanley, supra, cannot raise allegations of fraud, duress, misrepresentations, usury, mistake, and unconscionability.

VI. THE BANK HOLDING COMPANY ACT COUNTERCLAIM
The Bank Holding Company Act (BHCA) prohibits a bank from conditioning credit upon the requirement that "the customer provide some additional credit, property, or service" to the bank other than that "usually provided in connection with a loan ..." 12 U.S.C.A. § 1972(1)(C). The BHCA was not intended to "interfere with the conduct of appropriate traditional banking practices ...," S.Rep. No. 91-1084, 91st Cong., 2d Sess. 3 reprinted in 1970 U.S.Code Cong. & Admin.News 5519, 5535 (emphasis added), including attempts by banks to protect their investments. Dannhausen v. First National Bank of Sturgeon Bay, 538 F.Supp. 551, 563 (E.D. Wis.1982). See also, Sterling Coal Co., Inc. v. United American Bank in Knoxville, 470 F.Supp. 964 (E.D.Tenn.1979) (requiring guaranty is a traditional banking practice). Obtaining a personal guaranty from Windham to secure the payment of obligations by BOI was used for the traditional banking purpose of protecting FDIC's investment in the loan Windham fails to state a claim upon which relief can be granted; therefore, the BHCA claim is also dismissed.
Furthermore, Windham's counterclaim failed to allege that FDIC required him "to do an act not related to nor usually provided in connection with a loan." Swerdloff v. Miami National Bank, 584 F.2d 54 (5th Cir.1978). Thus, Windham's counterclaim does not even plead a BHCA violation.

VII. THE DTPA COUNTERCLAIM
In his DTPA counterclaim, Windham only asserts unconscionable conduct by FDIC, pursuant to TEX.BUS. & COM. CODE ANN. § 17.50(a)(3). As previously discussed, unconscionability is a personal defense unavailable to a guarantor. See, Wood v. Pierce, 6 U.C.C.Rep. 163 (N.Y. Supp.1969). Additionally, as previously discussed, defenses of fraud, misrepresentation and breach of warranty are personal, and thus the DTPA defenses of "false, misleading, or deceptive acts" in § 17.50(a)(1), and "breach of an express or implied warranty" in § 17.50(a)(2) are also personal defenses unavailable to the guarantor. Thus, Windham as guarantor cannot raise DTPA counterclaims.

VIII. THE RICO COUNTERCLAIM
In Grant v. Union Bank, 629 F.Supp. 570 (D.Utah 1986), the plaintiff, like Windham, was the president of a corporation who personally guaranteed a business loan from the defendant bank. The plaintiff alleged a violation of RICO for fraudulent misrepresentations concerning the loan. The court held the guarantor could not assert a RICO claim on behalf of its corporation and stated:
... although plaintiff may have been a shareholder, employee, director, and officer of the corporation, any injury incurred was actually sustained by the corporation first, and the plaintiff only incidentally or derivatively.
*586 At 573. Analysis of Windham's RICO claim reveals Windham is seeking to assert a claim on behalf of Beaumont Oil. As such, Windham cannot raise these RICO claims.
Moreover, it is impossible to determine which section of RICO is asserted by Windham. Notwithstanding this complete lack of adequate pleading, Windham has not alleged the necessary elements for a violation of any RICO section. 18 U.S.C. § 1962(a) and (b) require an allegation that "income" is used to acquire an "interest" in or control of an "enterprise." The counterclaim is devoid of allegations that the FDIC received income and acquired an interest in or control of any enterprise such as Beaumont Oil. Additionally, there is no allegation of a "pattern of racketeering activity," 18 U.S.C. § 1962(a), (b), (c), or an "enterprise." 18 U.S.C. § 1962(a), (b), (c). Thus, Windham does not plead a violation of RICO, and cannot raise a RICO counterclaim.

IX. CONCLUSION
For the reasons stated herein, it is the opinion of the court that the counterclaims asserted by Windham are hereby DISMISSED because (1) the doctrine of res judicata and judicial estoppel bar the assertion of those counterclaims, (2) they were compulsory counterclaims in the Beaumont Oil bankruptcy and cannot be raised by Windham herein, and (3) these counterclaims are all personal claims of Beaumont Oil that cannot be raised by Windham, as guarantor of Beaumont Oil's obligation.